Sam P. Israel, P.C.
Sam P. Israel (SPI0270)
Eleonora Zlotnikova (EZ8814)
180 Maiden Lane, 6th Floor
New York, New York 10038
T: (646) 787-9880 | F: (646) 787-9886

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARA FASHION LIMITED, and NEW FAIRSEL LIMITED,<br><br>         Plaintiffs,<br><br> -against-<br><br>HABIB ARAZI, PRINCESS, INC., PRINCESS OF NY, INC., and H & A COUTURE, INC.,<br><br>         Defendants. | Index No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Lara Fashion Limited ("**LFL**") and New Fairsel Limited ("**NFL**") (together, the "**Plaintiffs**"), by and through their undersigned counsel, Sam P. Israel, P.C., as and for their complaint against defendants Habib Arazi ("**Arazi**"), Princess, Inc. ("**Princess**"), Princess of NY, Inc. ("**PNY**"), and H & A Couture, Inc. ("**HAC**") (collectively, the "**Defendants**"), allege the following:

### NATURE OF THE ACTION

1. This action for breach of contract and price of goods sold under New York's Uniform Commercial Code ("**UCC**") is brought by two commonly-owned exporting companies, both based in Hong Kong. The Plaintiffs seek to recover the sum of **$675,316.01** (USD), which represents the price of apparel (the "**Goods**") sold, delivered,

and unequivocally accepted by Habib Arazi on behalf of his fungible corporate entities, Princess, PNY and HAC.

2.  The Plaintiffs began their business relationship with Arazi in 2009, when Arazi placed large orders for merchandise through Princess, only to dissolve the company one year later in the midst of a transaction, then directing the Plaintiffs to send invoices to the company's successor, PNY. At issue in this action are three LFL and two NFL invoices, which reflect the respective sales contracts between Arazi/Princess and the Plaintiffs in 2014-2015.

3.  Whereas Arazi received, inspected, and accepted the conforming Goods, he failed to tender timely and complete payments pursuant to the undisputed invoices issued by LFL and NFL. Even after Arazi resold the Goods to third parties, he continued to offer various excuses for nonpayment and entreated Plaintiffs for more time, all while acknowledging his payment obligations. Then, Arazi secretly dissolved PNY to thwart the Plaintiffs' collection efforts altogether.

4.  As with the corporate entities that preceded it, Arazi formed HAC to continue PNY's business operations, leaving the defrauded Plaintiffs with an outstanding unpaid balance of $675,316.01 and damages attendant to their inability to timely pay the workers, vendors, manufacturers and other personnel who worked on fulfilling Arazi's orders.

5.  By way of this action, the Plaintiffs seek to hold Araz liable, jointly and severally with Princess, PNY, and their successor in interest, HAC, for their respective causes of action set forth below, namely: trade contract price, and breach of contract or, in the alternative, unjust enrichment.

**PARTIES**

6.  Plaintiff LFL is a Hong Kong limited company, located at Lippo Sun Plaza, 28 Canton Road, Units 1301-07, Tsim Sha Tsui, Kowloon, Hong Kong. Plaintiff is a citizen of Hong Kong.

7. Plaintiff NFL is a Hong Kong limited company, located at Lippo Sun Plaza, 28 Canton Road, Units 1301-07, Tsim Sha Tsui, Kowloon, Hong Kong. Plaintiff is a citizen of Hong Kong.

8. The Plaintiffs are wholly owned affiliates of Newry Limited ("**Newry Group**"), a Mauritius company with offices in Hong Kong.

9. Upon information and belief, Princess is a dissolved corporation that was, at all relevant times, wholly owned and operated by Habib Arazi. According to the records of New York State, Department of State, Division of Corporations ("**DOS**"), Princess was incorporated in New York in June 2003 and dissolved on December 22, 2010; Princess's Principal Executive Office and designated address for service of process 1407 Broadway, Ste. 2319, New York, New York, 10018.

10. Upon information and belief, PNY is a dissolved corporation that was, at all relevant times, wholly owned and operated by Habib Arazi. According to DOS records, PNY was incorporated in New York in March 2010 and dissolved on May 16, 2016; PNY's Principal Executive Office and designated address for service of process 1407 Broadway, Ste. 2319, New York, New York, 10018.

11. Upon information and belief, HAC is an active New York corporation that is wholly owned and operated by Habib Arazi. According to DOS records, HAC was incorporated on September 25, 2015 and shares the same address with PNY but different suite number: 1407 Broadway, #3407, New York, New York, 10018.

12. Upon information and belief, Habib Arazi is a natural person who resides in the State of New York, with a principal place of business at 1407 Broadway, Stes. 2319, 3407, New York, New York, 10018; and, at all relevant times, Arazi was the sole shareholder and chief executive officer of Princess, PNY, and HAC.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds the statutory threshold.

14. The Court has personal jurisdiction over the Defendants because they reside and do business in this State and District; and/or due to their purposeful activities within the State which have given rise to the Plaintiff's injuries; and/or by reason of the Defendants' continuous and systematic conduct of business within this State and District.

15. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because the Defendants reside or maintain their corporate headquarters office in this District, and/or because a substantial part of the events or omissions giving rise to the underlying claims occurred in this District and the property that is the subject of the action is situated in this District.

## FACTS

16. The Newry Group is an apparel trading company. Since its formation in 2000, it has become one of the largest exporters in Asia and the Americas, achieving a cumulative turnover revenue of over $2 billion. Plaintiffs are part of the Newry Group of multinational companies that specialize in product development, supply chain management, and sourcing of apparel products to Central and South Americas, Europe and the United States.

17. Over the past two decades, the Newry Group's network of companies, including its wholly owned NFL and LFL, have established considerable goodwill among its clientele and trading partners. Among other things, NFL and LFL facilitate the manufacturing of clothing apparel pursuant to customer orders and specifications, as well as arrange for the exporting, customs clearing and shipping of the merchandise. Superior goods and apparel sourced by the Plaintiffs can be found in leading retail chain outlets throughout the world.

18. In or about 2009, Habib Arazi placed orders with the Plaintiffs under the name of his wholly-owned company, Princess. Throughout the parties' business relationship and course of dealing, Arazi would visit Hong Kong, choose the goods he wished to purchase from the Plaintiffs, and negotiate the quantity and price of the goods. Once the parties agreed on the material terms of the transaction, Plaintiffs would issue sales confirmations specifying the details of each order, which Arazi would sign before the Plaintiffs manufactured and delivered the goods into his care.

19. In 2014-2015, LFL and NFL received new purchase orders from Habib Arazi for clothing apparel (*i.e.*, the Goods) to be manufactured and shipped to Arazi in the United States.

20. Following a negotiated agreement between the parties as to the price, quantity and shipment details, the Plaintiffs issued their respective sales confirmations to Arazi/Princess, Inc., which Arazi signed. Accordingly, LFL and Princess entered into a sales contract for $405,280.01 worth of Goods, and NFL entered into a sales contract with Princess for $270,036.00 worth of Goods.

21. Yet, at the time of shipment, Arazi informed the Plaintiffs that he "changed the name" of his company and instructed them to issue all invoices and Bills of Lading to "Princess of NY, Inc." for all current and future transactions.

22. The Plaintiffs complied with Arazi's instructions, and entered "Princess of NY, Inc." in their respective databases as their customer of record, with the following address provided by Arazi: 1407 Broadway, Suite 2319, New York, NY 10018, USA.

23. Upon information and belief, Arazi did not change the name of Princess, Inc., as he claimed, but instead secretly dissolved the entity in the midst of his contractual obligations to the Plaintiffs.

24. Throughout the parties' subsequent dealings and communications, Plaintiffs understood PNY to be Arazi's wholly owned corporation that succeeded Princess as a wholesaler of clothing apparel in the United States. In their communications,

Arazi presented PNY as a financially solvent company that was capable of meeting its payment obligations. The Plaintiffs' representatives communicated solely with Arazi regarding all orders, shipments and payments for the Goods, and Arazi knew that LFL and NFL would transmit invoices with the terms of the parties' contracts and payment deadlines to Arazi's attention at PNY.

25. The Plaintiffs immediately and without delay devoted their workers, manufacturers, quality control personnel, raw materials, machinery, vendors, and other personnel to the labor-intensive manufacturing of the Goods.

26. The Plaintiffs then timely delivered the conforming Goods to Arazi's care in New York, in accordance with the terms of the sales contracts and the parties' course of dealing.

27. Arazi was given multiple opportunities to inspect the Goods. Upon information and belief, Arazi inspected them and did not issue a seasonable notice of rejection or express an intent to reject the Goods. Indeed, following inspection, Arazi accepted all Goods without protest.

28. Upon information and belief, Arazi has since resold the Goods to third parties and kept the proceeds.

29. Pursuant to the terms of the parties' agreement, course of dealing, and Plaintiffs' regular business practices, the Plaintiffs issued their respective invoices to PNY, care of Arazi, memorializing the parties' transactions and requesting payment in accordance with the deadlines set forth therein.

30. At issue are three unpaid LFL invoices and two unpaid NFL invoices, each reflecting the terms of the sales contracts, including shipment dates, amounts owed for the Goods, and payment deadlines (the "**Invoices**"). Below is a copy of the transaction summary report from the Plaintiffs' business records, which reflects the unpaid Invoices:

| PRINCESS of NY, INC. Overdue bills - LARA FASHION LIMITED | | | | | |
|---|---|---|---|---|---|
| Invoice No | Ship Dt | Due date | TERM | TENOR | Amount USD |
| IN161000192/16A | 15-Dec-14 | 14-Apr-15 | DA | 120 | 61,992.00 |
| IN181000169/18A, IN271000209/27A | 20-Jan-15 | 20-May-15 | DA | 120 | 284,194.01 |
| IN181000180/18A | 07-Jun-15 | 05-Oct-15 | DA | 120 | 59,094.00 |
| **Total overdue bills** | | | | | 405,280.01 |

| PRINCESS of NY, INC. Overdue bills - NEW FAIRSEL LIMITED | | | | | |
|---|---|---|---|---|---|
| Invoice No | Ship Dt | Due date | TERM | TENOR | Amount USD |
| IN271000203/27A | 16-Dec-14 | 15-Apr-15 | DA | 120 | 150,415.20 |
| IN273000003/27C | 22-Jun-15 | 20-Oct-15 | DA | 120 | 119,620.80 |
| **Total overdue bills** | | | | | 270,036.00 |

31.     The Plaintiffs unequivocally fulfilled their contractual obligations by manufacturing and delivering the conforming Goods to New York. Yet, Arazi failed to discharge his company's contractual obligations by intentionally failing to remit the amounts due and owing on the five Invoices.

32.     On more than one occasion, in text messages, emails, and telephone calls with Plaintiffs' representatives, Arazi acknowledged the amounts due and his obligations to remit payments pursuant to the Invoices. In this context, he offered various excuses for his delinquencies and continued to make promises to pay the invoiced amounts in the near future. For example, as evidenced in a series of text messages exchanged using the *Whatsapp* application in May 2015, Plaintiffs' representative, S. Vaidhya ("**SV**"), continued to demand payment even as Arazi agreed to the amount owed, promised to pay, and ultimately failed to do so:

7

```
[28/5/2015, 11:28:25 AM] Habib Ny: Hi boss take it easy . As I told bobby i will
sand the wire next week.
[28/5/2015, 11:28:59 AM] Vijay: We cannot proceed till we receive all what is due
[28/5/2015, 11:29:39 AM] Vijay: You decide how you want to work but we cannot accept
that you pay when you can
[28/5/2015, 11:30:05 AM] Vijay: You say you will pay all the time but it never
happens
[28/5/2015, 11:36:34 AM] Habib Ny: Will do so sir .
[28/5/2015, 1:58:13 PM] Vijay: Will do what ?
[28/5/2015, 1:58:20 PM] Vijay: You are not being serious
[28/5/2015, 8:02:25 PM] Habib Ny: I'm very serious sir
[28/5/2015, 10:19:16 PM] Vijay: We cannot proceed because we depend on cash flow so
once you pay we will proceed otherwise we cannot as we also have limit on capital
[28/5/2015, 10:19:30 PM] Vijay: I told you this then you were in HK
[28/5/2015, 10:20:23 PM] Vijay: I don't want you not to have goods so kindly place
orders with others so you have the goods you need
[28/5/2015, 10:44:35 PM] Habib Ny: Boss I'm trying to call you . Please call me
back. Thanks
[29/5/2015, 3:45:05 PM] Vijay: Pls call me when you wake up
```

33. During the subsequent months, Arazi continued to make excuses, promise payments, and entreat for more time from the Plaintiffs. The Plaintiffs' representatives explained to Arazi that timely payments for the Goods were needed to pay for the workers, vendors, manufacturers and other personnel who worked on fulfilling the Defendants' orders for the customized Goods. Still, despite Arazi's promises and representations, he remained recalcitrant, ignoring deadlines and the Plaintiffs' demands for payment, even as he continued to make excuses and promises to pay in the future.

34. At one point, Arazi transmitted $5,000.00 by wire from the bank account of "H & A Couture Inc."[1] When the Plaintiffs' representative emailed Arazi demanding to know whether HAC is Arazi's company and "if all future payments will come from this company," Arazi responded, "yes. This is from me. thanks." (Email correspondence on file with Plaintiffs' counsel.).

35. When no further payments were made, SV informed Arazi in a text message on October 9, 2015, that the Plaintiffs would stop doing business with him because of his false promises and unpaid invoices. In an email dated November 2, 2015, Arazi urged to

---

[1] All payments by Arazi/PNY/HAC have been applied to the outstanding balance and reflected in the Plaintiffs' internal account summary report, as shown in paragraph 30 of this Complaint.

8

continue the parties' business relationship, confirmed the amount owed and date by which the assured payment would be remitted:

```
-----Original Message-----
From: Habib Arazi [mailto:h.arazi@princessapparel.net]
Sent: Monday, November 02, 2015 4:20 AM
To: S. Vaidhya (A/C-475)
Subject: RE: Princess Apparel - Payment proposal for outstanding bills.

DEAR SIR
I AGREE FOR THE BALNCE UP TO10/30/2015
$ 675,316.01
I AGREE TO PAY THEM UP APRIL 2016 .
THANKS
```

36. On December 18, 2015, SV and Arazi exchanged the following text messages by *Whatsapp*:

```
[18/12/2015, 8:59:04 AM] Vijay: Dear Habib did u arrange payment today ?
[18/12/2015, 9:56:44 AM] Vijay: Hello any news
[18/12/2015, 10:41:20 AM] Vijay: Pls let me know we need payments
[18/12/2015, 10:42:30 AM] Habib Ny: Sir . I'm working on it I think it will be Monday
[18/12/2015, 10:43:06 AM] Vijay: Thanks
[18/12/2015, 10:43:38 AM] Habib Ny: You're welcome
```

37. Unbeknownst to Plaintiffs' at the time, Arazi dissolved PNY without notice and while PNY had a large outstanding balance with the Plaintiffs.

38. Upon information and belief, Arazi transferred Princess's assets to PNY when he dissolved Princess in 2010; then, in 2016, he transferred PNY's assets to HAC around the time of PNY's dissolution.

39. As the Plaintiffs continued to demand payment, Arazi delayed and thwarted the Plaintiffs' collection efforts by making false promises and representations of forthcoming payments, then abandoned the company, severed communications with the Plaintiffs and continued to do business with others through HAC.

40. Upon information and belief, HAC engages in the same business as its predecessors, namely wholesaling of merchandise sourced from overseas.

41. Upon information and belief, at all relevant times, neither Princess, PNY, nor HAC had any full-time employees except Arazi; they did not maintain minutes of corporate meetings, separate financial statements or a website; they had no board of directors, never held shareholder meetings, and declared no dividends.

42. Upon information and belief, at all relevant times, Princess, PNY, and HAC have been fungible companies with commingled funds and shared assets, such that they never had separate corporate existences from Arazi and are truly his alter egos.

43. Upon information and belief, Habib Arazi's fungible companies all engaged in the same business, with commingled books and records, and operating from the same office. Princess, PNY and HAC were all formed in succession and are continuations of the predecessor's business operations.

44. Arazi conducts business by forming new corporate entities to enter contracts and then dissolving them when payment comes due, only to form a new company to continue his fraud.

45. At all relevant times, Arazi presented Princess and PNY as active entities with sufficient capital to honor their contractual obligations. Arazi represented to Plaintiffs on many occasions that PNY was prepared to remit payment for the merchandise it had ordered, received, and resold to third parties. Yet, contrary to Arazi's representations, Princess and PNY have been inadequately capitalized during the time that they did business with the Plaintiffs.

46. Upon information and belief, Arazi exercised complete domination and control over all aspects of his companies' interchangeable operations; Arazi has used this control to cause harm to Plaintiffs and other customers, vendors, and contractual counterparties.

47. Arazi never intended to honor Princess's or PNY's payment obligations, as the companies were used solely to shield Arazi from personal liability for the debts he incurred with Plaintiffs.

10

48.     The DOS records reveal the following *known* companies that are associated with Habib Arazi and share the same business address (with sometimes varying suite numbers):

| Company | DOS ID # | Filing / Dissolution date | CEO / Principal Office |
|---|---|---|---|
| **PRINCESS OF NY, INC.** | 3917924 | MARCH 01, 2010 / INACTIVE - Dissolution (May 16, 2016) | HABIB ARAZI<br>1407 BROADWAY<br>STE 2319<br>NEW YORK, NEW YORK, 10018 |
| **PRINCESS, INC.** | 2937471 | JULY 31, 2003 / INACTIVE - Dissolution (Dec 22, 2010) | HABIB ARAZI<br>1407 BROADWAY STE 2319<br>NEW YORK, NEW YORK, 10018 |
| **SWEET PRINCESS, INC.** | 3356574 | MAY 03, 2006 | SWEET PRINCESS, INC.<br>1407 BROADWAY<br>STE 2319<br>NEW YORK, NEW YORK, 10018 |
| **PRINCESS COLLECTIONS, INC.** | 2937471 | JULY 31, 2003 / INACTIVE - Dissolution (Dec 22, 2010) | HABIB ARAZI<br>1407 BROADWAY STE 2319<br>NEW YORK, NEW YORK, 10018 |
| **H & A COUTURE, INC.** | 4825450 | SEPTEMBER 25, 2015 | H & A COUTURE, INC.<br>1407 BROADWAY # 3407<br>NEW YORK, NEW YORK, 10018 |

*See* New York State, Department of State, Division of Corporations, State Records & UCC, *available at* https://www.dos.ny.gov/corps/bus_entity_search.html.

49.     Here, Arazi deployed Princess and PNY to defraud the Plaintiffs, as he reaped windfall profits from reselling their Goods without ever paying for them.

50.     Plaintiffs are the latest victims of Arazi's fraud and deceitful business practices. Unless the corporate veils of Princess and PNY are pierced and Arazi is held liable for **$675,316.01**, together with applicable costs and interest, the Defendant will continue his fraudulent scheme against the Plaintiffs and potentially other businesses by profiting from what are essentially stolen Goods.

51.     Additionally, PNY's successor corporation, HAC, should be held jointly and severally liable with Arazi, Princess, and PNY for the price of Goods that the Plaintiffs manufactured, shipped and delivered to Arazi.

11

## COUNT I

## For Trade Contract Price of Goods Sold by <u>LFL</u> Under U.C.C. § 2-709(1)(a)
## (Against Princess, PNY, HAC, and Arazi)

52. The Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

53. Pursuant to U.C.C. § 2-709(1)(a), "when the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price of goods accepted…."

54. In 2014-2015, Arazi ordered $405,280.01 worth of Goods from LFL and entered sales contracts with the Plaintiff on behalf of Princess. LFL fulfilled its contractual obligations by, immediately and without delay, devoting workers, manufacturers, quality control personnel, raw materials, machinery, vendors, and other personnel to the labor-intensive manufacturing of the conforming Goods. In accordance with the terms of the sales contracts between LFL and Princess, LFL timely delivered the conforming Goods into Arazi's care in New York.

55. Pursuant to the terms of the parties' agreement, and as requested by Arazi, the Plaintiff issued its Invoices to PNY, care of Arazi. The Invoices memorialized the parties' transactions and set forth payment deadlines.

56. Arazi was given multiple opportunities to inspect the Goods. Upon information and belief, Arazi inspected them, and did not issue seasonable notice of rejection or express an intent to reject the Goods. Indeed, following inspection, Arazi accepted all Goods without protest. Upon information and belief, Arazi has since resold the Goods to third parties and kept the proceeds.

57. Following months of Arazi's delays, excuses, and promises to remit payment, even as he acknowledged the balance owed on the Invoices, the Defendants failed to pay the principal balance of **$405,280.01** to LFL. A summary of the invoiced amounts due to LFL is as follows:

| PRINCESS of NY, INC. | | | | | |
|---|---|---|---|---|---|
| Overdue bills - LARA FASHION LIMITED | | | | | |
| Invoice No | Ship Dt | Due date | TERM | TENOR | Amount USD |
| IN161000192/16A | 15-Dec-14 | 14-Apr-15 | DA | 120 | 61,992.00 |
| IN181000169/18A, IN271000209/27A | 20-Jan-15 | 20-May-15 | DA | 120 | 284,194.01 |
| IN181000180/18A | 07-Jun-15 | 05-Oct-15 | DA | 120 | 59,094.00 |
| Total overdue bills | | | | | 405,280.01 |

58.     While this balance was outstanding, Arazi secretly dissolved PNY (Princess's successor entity) in order to delay and frustrate LFL's collection efforts.

59.     Upon information and belief, Arazi secretly formed HAC as PNY's successor in interest and transferred all PNY assets to HAC.

60.     Upon information and belief, at all relevant times, Princess and PNY were inadequately capitalized and then dissolved even as Arazi continued to do business with the companies' counterparties.

61.     Accordingly, Arazi should be held jointly and severally liable, along with Princess, and its successor entities, PNY and HAC, for the price of Goods accepted (and resold) by the Defendants.

62.     In sum, as a result of the Defendants' failure to pay for price of Goods sold, the Defendants are jointly and severally liable for the principal amount of **$405,280.01**, together with any incidental damages and pre-judgment interest at the rate of 9%, the full amount of which shall be assessed at trial.

## COUNT II
### For Trade Contract Price of Goods Sold by NFL Under U.C.C. § 2-709(1)(a)
### (Against PNY, HAC and Arazi)

63.     The Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

13

64. Pursuant to U.C.C. § 2-709(1)(a), "when the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price of goods accepted…."

65. In 2014-2015, Arazi ordered $270,036.00 worth of Goods from NFL and entered sales contracts with the Plaintiff on behalf of Princess. LFL fulfilled its contractual obligations by, immediately and without delay, devoting workers, manufacturers, quality control personnel, raw materials, machinery, vendors, and other personnel to the labor-intensive manufacturing of the conforming Goods. In accordance with the terms of the sales contracts between NFL and Princess, NFL timely delivered the conforming Goods into Arazi's care in New York.

66. Pursuant to the terms of the parties' agreement, and as requested by Arazi, the Plaintiff issued its Invoices to PNY, care of Arazi. The Invoices memorialized the parties' transactions and set forth payment deadlines.

67. Arazi was given multiple opportunities to inspect the Goods. Upon information and belief, Arazi inspected them, and did not issue seasonable notice of rejection or express an intent to reject the Goods. Indeed, following inspection, Arazi accepted all Goods without protest. Upon information and belief, Arazi has since resold the Goods to third parties and kept the proceeds.

68. Following months of Arazi's delays, excuses, and promises to remit payment, even as he acknowledged the balance owed on the Invoices, the Defendants failed to pay the principal balance of **$270,036.00** to NFL. A summary of the invoices and amounts due to NFL is as follows:

```
PRINCESS of NY, INC.
Overdue bills  - NEW FAIRSEL LIMITED
Invoice No              Ship Dt     Due date   TERM  TENOR  Amount USD
IN271000203/27A         16-Dec-14   15-Apr-15  DA    120    150,415.20
IN273000003/27C         22-Jun-15   20-Oct-15  DA    120    119,620.80
Total overdue bills                                         270,036.00
```

69. While this balance was outstanding, Arazi secretly dissolved PNY (Princess's successor entity) in order to delay and frustrate NFL's collection efforts.

70. Upon information and belief, Arazi secretly formed HAC as PNY's successor in interest and transferred all PNY assets to HAC.

71. Upon information and belief, at all relevant times, Princess and PNY were inadequately capitalized and then dissolved even as Arazi continued to do business with the companies' counterparties.

72. Accordingly, Arazi should be held jointly and severally liable, together with Princess, and its successor entities, PNY and HAC, for the price of Goods accepted (and resold) by the Defendants.

73. In sum, as a result of the Defendants' failure to pay for price of Goods sold, the Defendants are jointly and severally liable for the principal amount of **$270,036.00**, together with any incidental damages and pre-judgment interest at the rate of 9%, the full amount of which shall be assessed at trial.

**COUNT III**

**For Breach of Contract with <u>LFL</u>**

**(Against Princess, PNY, HAC and Arazi)**

74. The Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

75. Under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.

76. In 2014-2015, LFL entered sales contracts with Princess for $405,280.01 worth of clothing apparel (the Goods) to be manufactured and shipped to Princess in New York, care of Arazi. LFL fulfilled its contractual obligations by, immediately and without delay, devoting workers, manufacturers, quality control personnel, raw materials, machinery, vendors, and other personnel to the labor-intensive manufacturing of the conforming Goods. In accordance with the terms of the sales contracts, LFL then timely delivered the conforming Goods into Arazi's care in New York.

77. The Goods were delivered, inspected and accepted. Meanwhile, Arazi dissolved Princess and formed PNY, instructing LFL to issue all invoices to PNY. Though the Plaintiff did as Arazi instructed, Arazi nevertheless failed to remit timely and complete payments under the contract.

78. Upon information and belief, Arazi has since resold the Goods to third parties and kept the proceeds.

79. Arazi caused Princess to breach the contract with LFL by failing to pay invoiced amounts.

80. Following months of Arazi's delays, excuses, and promises to remit payment, even as he acknowledged the balance owed to LFL, Arazi secretly dissolved PNY (Princess's successor in interest) and formed yet another successor company, HAC.

81. As a result of Arazi contractual breaches, LFL was damaged in the amount of **$405,280.01**, together with applicable interest and costs.

82. Arazi is liable for the breaches, jointly and severally with Princess and PNY, under alter ego/corporate veil piercing theories of liability because the companies were Arazi's alter egos and not independent companies; their sole purpose was to shield Arazi from liability as he defrauded the Plaintiffs and dissolved them to avoid payment.

83.    HAC should also be held liable for the breach as Princess and PNY's successor and beneficiary of LFL's contract with Princess.

84.    As a result of the foregoing breaches, Defendants are jointly and severally liable to LFL for the principal amount of **$405,280.01**, together with applicable interest and costs, the amount of which will be assessed at trial.

## COUNT IV
### For Breach of Contract with NFL
### (Against PNY, HAC and Arazi)

85.    The Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

86.    Under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.

87.    In 2014-2015, NFL entered sales contracts with Princess for $270,036.00 worth of clothing apparel (the Goods) to be manufactured and shipped to Princess in New York, care of Arazi. NFL fulfilled its contractual obligations by, immediately and without delay, devoting workers, manufacturers, quality control personnel, raw materials, machinery, vendors, and other personnel to the labor-intensive manufacturing of the conforming Goods. In accordance with the terms of the sales contracts, NFL then timely delivered the conforming Goods into Arazi's care in New York.

88.    The Goods were delivered, inspected and accepted. Meanwhile, Arazi dissolved Princess and formed PNY, instructing NFL to issue all invoices to PNY. Though the Plaintiff did as Arazi instructed, Arazi nevertheless failed to remit timely and complete payments under the contract.

89.    Upon information and belief, Arazi has since resold the Goods to third parties and kept the proceeds.

90.    Arazi caused Princess to breach the contract with NFL by failing to pay invoiced amounts.

91. Following months of Arazi's delays, excuses, and promises to remit payment, even as he acknowledged the balance owed to NFL, Arazi secretly dissolved PNY (Princess's successor in interest) and formed yet another successor company, HAC.

92. As a result of Arazi/PNY's contractual breaches, NFL was damaged in the amount of **$270,036.00**, together with applicable interest and costs.

93. Arazi is liable for the breaches, jointly and severally with Princess and PNY, under alter ego/corporate veil piercing theories of liability because the companies were Arazi's alter egos and not independent companies; their sole purpose was to shield Arazi from liability as he defrauded the Plaintiffs and dissolved them to avoid payment.

94. HAC should also be held liable for the breach as Princess and PNY's successor and beneficiary of NFL's contract with Princess.

95. As a result of the foregoing breaches, Defendants are jointly and severally liable to NFL for the principal amount of **$270,036.00**, together with applicable interest and costs, the amount of which will be assessed at trial.

## COUNT V
### Against Arazi
### (In the Alternative to Counts I and II)

96. The Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

97. This claim is stated in the alternative to Counts I, II, III, and IV.

98. Whereas Arazi ordered and accepted the Goods from Plaintiffs and has not paid for the Goods, which, upon information and belief, he has resold to third parties for profit, Arazi has realized and continues to realize substantial financial gains from his unlawful activities.

99. Consequently, Arazi has been and continues to be unjustly enriched at the Plaintiffs' expense. The Plaintiffs are therefore entitled to recover those sums by which Arazi have been and will hereafter be unjustly enriched, the amount of which shall be determined at trial.

WHEREFORE, for the reasons set forth herein, the Plaintiffs demand Judgment and Order against each of the Defendants, holding Princess, Arazi, PNY, and HAC jointly and severally liable for:

a. **Count I:** the principal amount of **$405,280.01**, together with any incidental damages and pre-judgment interest at the rate of 9%, the full amount of which shall be assessed at trial;
b. **Count II:** the principal amount of **$270,036.00**, together with any incidental damages and pre-judgment interest at the rate of 9%, the full amount of which shall be assessed at trial;
c. **Count III:** the principal amount of **$405,280.01**, together with applicable interest and costs, the amount of which will be assessed at trial;
d. **Count IV:** the principal amount of **$270,036.00**, together with applicable interest and costs, the amount of which will be assessed at trial;
e. **Count V:** actual damages in an amount to be determined at trial, but not less than **$675,316.01**, together with interest and costs;
f. **On all Counts**: interest, costs and reasonable attorneys' fees, where applicable; and
g. Whatever other and further relief the Court deems just and proper.

Dated:   New York, NY
         October 1, 2018

Respectfully submitted:

**Sam P. Israel, P.C.**

By: */s/Sam P. Israel*
Sam P. Israel, Esq. (SPI 0270)
Eleonora Zlotnikova (EZ8814)
180 Maiden Lane, 6th Floor
New York, NY 10038
T: (646) 787-9880 | F: (646) 787-9886
E: samisrael@spi-pc.com
*Counsel for Plaintiffs*

19